IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BLACKHAWK SCHOOL DISTRICT, a local
government entity,

                     Plaintiff,

         v.

NORFOLK SOUTHERN CORPORATION
and NORFOLK SOUTHERN RAILWAY
COMPANY,

                     Defendants.

Civil Action No. 2:23-cv-00500

Judge Cathy Bissoon

**JURY TRIAL DEMANDED**

**ELECTRONICALLY FILED**

### BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE

AND NOW, come Defendants, Norfolk Southern Corporation ("NSC") and Norfolk Southern Railway Company ("NSRC"), by and through their counsel, Dickie, McCamey & Chilcote, P.C., and file the within Brief in Support of Defendants' Motion to Transfer Venue under the Third Circuit's "first-filed" rule and 28 U.S.C. §1404(a), stating as follows:

### I.    INTRODUCTION

This matter arises out of the February 3, 2023 derailment of an NSRC train in East Palestine, Ohio (the "February 3 derailment"). Plaintiff in this case is a Pennsylvania school district whose territory includes areas that border Ohio near East Palestine. Following the February 3 derailment, over 30 other cases have been filed on behalf of businesses, individuals, and putative class actions that are currently pending in the United States District Court for the Northern District of Ohio. This case—filed over a month after multiple lawsuits were filed in Ohio—is the only matter related to the February 3 derailment currently pending in the Western District of Pennsylvania.

In order to streamline the litigation related to the February 3 derailment and conserve the parties' and the courts' resources, Defendants seek to transfer this case to the United States District Court for the Northern District of Ohio.  Transfer is proper under both the Third Circuit's "first-filed" rule as well as the provisions of 28 U.S.C. § 1404(a). Plaintiff's rights will continue to be protected and they will suffer no prejudice as a result of the transfer of this matter, and consolidating the cases related to the February 3 derailment in a single judicial district will promote judicial efficiency and a consistency of results, as well as allowing a single court to coordinate the voluminous discovery efforts related to these cases.

## II.   FACTUAL BACKGROUND AND RELATED CASES

Plaintiff filed its Complaint on March 23, 2023.  Dkt. No. 1.  The Complaint comprises seven causes of action, all related to the February 3 derailment: (1) negligence; (2) negligence per se; (3) strict liability; (4) private nuisance; (5) public nuisance; (6) future health monitoring; and (7) trespass.  While styled as an individual action, Plaintiff brings these claims on behalf of itself but also for alleged harm to Plaintiff's students and staff.  *See* Compl. ¶¶ 48, 55, 64, 71, 83, 88-92, 102. Plaintiff's district is geographically located in both Beaver and Lawrence Counties in Pennsylvania, and portions of the district border Ohio near East Palestine.  *Id.* ¶ 7. Plaintiff's school buildings and facilities are all located within fifteen miles of East Palestine.  *Id.* ¶¶ 6, 21.

The factual allegations in Plaintiff's Complaint all relate to the February 3 derailment. Plaintiff alleges that a train, operated by the Defendants, derailed near East Palestine, which resulted in 38 derailed cars and an ensuing fire.  *Id.* ¶¶ 22-23.  Plaintiff also alleges that as a result of the derailment, certain hazardous materials were released and contaminated the local ground, air, and waterways. *Id.* ¶¶ 26-28; 33-38.  Plaintiff further alleges that these

materials travelled from the derailment site and contaminated Plaintiff's property and the property in its district. *Id.* ¶ 42. As noted above, Plaintiff claims these materials caused damage to its property, and to its students and staff.

This is not the first lawsuit arising out of the February 3 derailment. Before the filing of this action, multiple other lawsuits advancing substantially the same—if not identical—claims and allegations were filed (or were removed and are now pending) in the Northern District of Ohio. As of the filing of this motion, Defendants are aware of 32 other lawsuits related to the February 3 derailment, all pending in the Northern District of Ohio. The first of these lawsuits, *Feezle v. Norfolk Southern Corporation*, Case No. 4:23-cv-00242, was filed on February 7, 2023—well over a month before Plaintiff brought this suit—and was brought on behalf of a putative class of individuals and businesses near the derailment site. Subsequent suits, including *Erdos v. Norfolk Southern Corporation*, Case No. 4:23-cv-00257, filed on February 9, 2023, include as putative class members all persons within a 30-mile radius of the derailment site. With the exception of one case, all of those lawsuits are currently pending in the Northern District of Ohio before the Honorable Benita Y. Pearson.

These numerous suits assert a number of legal claims, the vast majority of which are the same as what Plaintiff alleges here. All the complaints center around alleged negligence, but also asserts claims sounding in nuisance, trespass, medical monitoring, among others. No responsive pleadings have yet been filed, but the parties and Judge Pearson have already devoted significant time and attention to the matters. Judge Pearson has already held multiple hearings, including on two different motions for temporary restraining orders, and plaintiffs' motion to appoint interim class counsel and a leadership structure. *See Erdos v. Norfolk Southern Corp.*, Case No. 4:23-cv-00268 (Feb. 24, 2023), Dkt. No. 20 (Tr. of Hr'g on

Pls.' Mot. for TRO held on Feb. 27); *Ceramfab, Inc. v. Norfolk Southern Corporation,* Case No. 4:23-cv-00509 (Mar. 24, 2023), Dkt. No. 19 (Tr. of Hearing on Pls.' Mot. for TRO held on Mar. 22); and *Feezle*, Case No. 4:23-cv-00242 (Min. of Proc. on Plaintiffs' Motion to Appoint Interim Class Counsel and a Leadership Structure held on Mar. 31).  On February 5, 2023, Judge Pearson entered an order appointing interim class counsel and consolidating the cases for pretrial purposes.  *See Feezle* at Dkt. No. 28.

### III.   ARGUMENT

#### A.  This Case Should Be Transferred Under the First-Filed Rule

The Third Circuit Court of Appeals has adopted the first-filed rule, which states that "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *EEOC v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988) (quoting *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941)).  The rule "encourages sound judicial administration and promotes comity among federal courts of equal rank." *Id.* at 971.  Its primary purpose is to "avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments." *Id.* at 977 (citing *Church of Scientology v. United States Dept. of Army*, 611 F.2d 738, 750 (9th Cir.1979)).  Therefore, district courts may "consolidate similar cases by transferring later-filed cases for consolidation with the first-filed case." *Emps.' Ret. Sys. of City of St. Petersburg, Fla. v. Teva Pharm. Indus. Ltd.*, 2019 U.S. Dist. LEXIS 186440 at *3 (E.D. Pa. Oct. 8, 2019).

"[T]he substantive touchstone of the first-to-file inquiry is subject matter." *Shire U.S., Inc. v. Johnson Matthey, Inc.*, 543 F.Supp.2d 404, 409 (E.D. Pa. 2008).  The standard for assessing the similarity of cases is a "flexible" one, focusing on whether there is substantial overlap—not identical proceedings.  *Teva Pharm. Indus. Ltd.*, 2019 U.S. Dist. LEXIS 186440 at

*3 (citing *Law Sch. Admission Council, Inc. v. Tatro*, 153 F. Supp. 3d 714, 724 (E.D. Pa. 2015)). Thus, Chief Judge Hornak, joining other courts from this Circuit, has held that "substantial overlap in subject matter between two (2) separate actions is significant in terms of determining whether or not an action should be transferred under the first-filed rule." *Osborne v. Emp. Benefits Admin. Bd. of Kraft Heinz*, 2020 U.S. Dist. LEXIS 62443, at *14 (W.D. Pa. Apr. 9, 2020).  As the case law makes clear, "the applicability of the first-filed rule is not limited to mirror image cases where the parties and the issues perfectly align. Rather, the principles underlying the rule support its application where the subject matter of the later filed case substantially overlaps with that of the earlier one." *Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc.*, 2009 U.S. Dist. LEXIS 54198, at *18 (E.D. Pa. June 26, 2009).

In *Osborne*, Chief Judge Hornak concluded that five cases related to an SEC investigation of the Kraft-Heinz company should be transferred to the Northern District of Illinois based on the first-filed rule.  2020 U.S. Dist. LEXIS 62443 at *6.  The matters at issue were not identical legal claims, and involved claims under ERISA and various shareholder derivative actions. *Id.* at *4.  The court concluded that the cases filed in the Northern District of Illinois pre-dated the Western District of Pennsylvania lawsuits and that, "while the theories of liability differ across cases, the factual background and subject matter is almost identical." *Id.* at *36. Specifically, every case "revolve[d] around the same alleged misstatements and omissions." *Id.*  The various plaintiffs argued that the differences in the legal claims weighed against application of the first-filed rule, but the court rejected this argument, holding "a flexible analysis of the first-filed rule directs district courts to consider

whether or not 'the subject matter of the later filed case substantially overlaps with that of the earlier one'—not the parties or the legal claims for relief." *Id.* at *37 (citation omitted).

Similarly, in *Catanese v. Unilever*, the district court transferred a class-action lawsuit about the branding as "all-natural" of certain ingredients contained in ice cream. 774 F. Supp. 2d 684, 685-86 (D.N.J. 2011).   A separate class action, also purportedly on behalf of a nationwide class, was filed three days prior in the Northern District of California.  *Id.* at 686. The plaintiffs opposed the transfer on the grounds that the proposed classes were not identical, the three days between the filings was too minor a difference to warrant the imposition of the rule, and the two cases involved distinct state law claims.  *Id.* at 687-89. The court rejected each of these arguments.  *Id.*

The illustrative cases above underscore the first-to-file rule is satisfied here.  This case is of course not the first filed case—far from it, with multiple cases filed months earlier in the Northern District of Ohio.   And the claims and underlying allegations easily satisfy the flexible standard of "substantial overlap," *Osborne*, 2020 U.S. Dist. LEXIS 62443—indeed, they are virtually identical.  That should be the end of the matter.

Any arguments by Plaintiff to the contrary should fail.   Because Plaintiff cannot dispute that the claims are the same, it may attempt to invoke differences between the plaintiffs.  As the case law makes clear, however, "'whether the cases share subject matter is more important than the absolute identity of the parties.'" *Id.* at 688 (citation omitted). Indeed, "the proper focus"—numerous courts in this Circuit have held—"is on subject matter not parties [,] … if the first-filed rule failed to focus on the overlap of the subject matter it might encourage rather than discourage duplicative suits[.]" *Ivy Dry, Inc. v. Zanfel Lab'ys, Inc.,* 2009 U.S. Dist. LEXIS 53307, at *15 (D.N.J. June 24, 2009).   Here too, the absence of

6

complete identity between plaintiffs poses no impediment to transfer, as the subject matter, the train derailment, is identical across complaints.

Plaintiff may also attempt to invoke the early procedural status of the alternative forum or argue that its case—while filed over a month after multiple cases in the Northern District of Ohio—should not be subject to the first-file rule.  Third Circuit precedent forecloses these arguments, as the court in *Unilever* recognized: "[T]he Third Circuit has held that the policy reasons underlying the first-filed rule are 'just as valid when applied to the situation where one suit precedes the other by a day as they are in a case where a year intervenes between the suits.'"  774 F. Supp. 2d at 688–89 (D.N.J. 2011) (quoting *Crosley Corp.*, 122 F.2d at 929).  And in any event, while the first filed cases are in their early stages, the parties and the court have already devoted substantial attention to them—including through briefing and hearings on two temporary restraining orders and ongoing coordination and oversight by the court.

### B.  This Case Should Be Transferred Under 28 U.S.C. § 1404(a)

The Court need go no further than the first-filed rule, but this case also should be transferred under a standard application of 28 U.S.C. § 1404(a).  As that statute provides, "a district court may transfer a civil action to another district where the case might have been brought . . . for the convenience of the parties and witnesses and in the interest of justice."  *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018).  "The purpose of transferring venue under § 1404(a) is to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Stillwagon v. Innsbrook Golf & Marina, LLC*, 2013 U.S. Dist. LEXIS 38387 at *24 (W.D. Pa. Mar. 20, 2013) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616(1964)). "[T]he decision

to transfer must incorporate all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Rappoport v. Steven Spielberg, Inc.,* 16 F. Supp. 2d 481, 498 (D.N.J. 1998) (quotation and citations omitted). "Courts in this Circuit have frequently held that the pendency of a related or similar case in another forum is a powerful reason to grant a motion for a change of venue." *Am. Inst. for History Educ., LLC v. E-Learning Sys. Int'l LLC,* 2010 U.S. Dist. LEXIS 120946, at *7 (D.N.J. Nov. 16, 2010) (citations omitted).

The court undertakes a two-step analysis when considering a motion to transfer venue. First, the court must determine whether the alternative forum is a proper venue. *Rappoport,* 16 F. Supp. 2d at 498-99. Second, the court should consider whether the moving party has shown that the "proposed alternative forum is not only adequate, but also more convenient than the present forum." *Id.* at 499. The Third Circuit, in the seminal case of *Jumara v. State Farm Ins. Co.,* created a list of factors in two categories, private interests and public interests, for courts to consider when analyzing a motion to transfer under Section 1404(a). 55 F.3d 873, 879-80 (3d Cir. 1995). The private factors considered are: (1) the plaintiff's forum preference; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties indicated by their relative physical and financial condition; (5) the convenience of witnesses; and (6) the location of books and records relevant to the dispute. *Id.* at 879.

The public factors considered are: (1) the enforceability of the judgment; (2) practical concerns that could reduce the time and expense necessary to resolve the claims at issue; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6)

8

the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879-80.   In this case, the balance of private and public interests articulated in *Jumara* weigh strongly in favor of transfer.

        1.   <u>Venue Lies in the Northern District of Ohio</u>

The first inquiry is whether this action "might have been brought" in the Northern District of Ohio.  28 U.S.C. § 1404(a).  Plaintiff's claims arise under state common law causes of action.  Consequently, venue is determined by the provisions of 28 U.S.C. § 1391.  At issue in this case is Subsection (b)(2), which provides that "[a] civil action may be brought in— . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2).

Plaintiff's Complaint, although involving residents of Pennsylvania, inherently arises out of events which occurred in Ohio.  The February 3 derailment occurred in East Palestine, Ohio, which is only a few miles from the border with Beaver County, Pennsylvania, and Plaintiff's district.  *See* Compl.   ¶¶ 4, 21.  The vast majority of the factual averments in Plaintiff's Complaint deal with events that occurred within Ohio, including the derailment itself, the controlled burn, and the subsequent clean-up.  *Id.* ¶¶ 20, 22-37.  Plaintiff only contends that damages were felt in Pennsylvania as a result of certain hazardous materials entering the ground, water, and atmosphere, *see id.* ¶¶ 38-43, but the genesis of their allegations lie in Ohio.  Consequently, a substantial portion of the events giving rise to Plaintiff's claims occurred in Ohio, and venue is therefore proper in the Northern District of Ohio.  Personal jurisdiction and subject matter jurisdiction likewise exist in the Northern

District of Ohio, as evidenced by the numerous other actions previously filed in that district, and Defendants do not contest that court's jurisdiction.

    2.  <u>Private Interest Considerations Under *Jumara*</u>

       i.  *Plaintiff's Forum Preference*

Generally, a Plaintiff's choice of forum is "not to be lightly disturbed." *Jumara*, 55 F.3d at 879. However, in cases involving numerous plaintiffs—including, as here, putative class actions—the plaintiff's forum selection is entitled to less weight. *See Scanlan v. Am. Airlines Grp., Inc.*, 366 F. Supp. 3d 673, 677 (E.D. Pa. 2019). And in all events, "[a] plaintiff's choice of forum is 'neither dispositive of the transfer analysis nor is it the only factor to be considered." *Linwood Trading Ltd. v. Am. Metal Recycling Servs.*, 2015 U.S. Dist. LEXIS 115395, at *4 (D.N.J. Aug. 28, 2015) ( quoting *American Tel. & Tel. Co. v. MCI Communications Corp.*, 736 F. Supp. 1294, 1306 (D.N.J. 1990)). "The preference for honoring a plaintiff's choice of forum is simply that, a preference; it is not a right." *Santomenno v. Transamerica Life Ins. Co.*, 2012 U.S. Dist. LEXIS 44883, at *14 (D.N.J. Mar. 30, 2012) (quoting *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 480 (D.N.J. 1993)). Here, even if this Court were to give weight to Plaintiff's preference, the balance of the remaining factors still weighs heavily in favor of transfer.

      ii.  *Defendant's Forum Preference*

Defendants seek to litigate this and the other matters arising out of the February 3 derailment in a single court to both streamline case administration and discovery, and to allow for resolution of all matters related to the derailment in a consistent and efficient manner. Defendants do not seek to transfer this matter to their home forum, but instead seek to create a single forum where all of these cases may be administered.

iii.    *Whether the Claim Arose Elsewhere*

Although Plaintiff's property is situated in this District, there is no argument that the facts underlying the claims in this case arose almost exclusively in the Northern District of Ohio.  "This consideration focuses on where the activities relevant to the claims at issue took place." *Stillwagon* 2013 U.S. Dist. LEXIS 38387, at *86; *see also Van Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988) (holding that the "locus of the alleged culpable conduct" determines the place where the claim arose); *Leroy v. Great W. United Corp.*, 443 U.S. 173, 185-86 (1979) (stating that an important factor in determining where a claim arises is where the conduct occurred that provided the basis for the claim).

Unlike cases involving contracts or other more ethereal actions, in this case it is clear the derailment occurred in Ohio.  *See* Compl. ¶¶ 20, 22-24.  The alleged release of hazardous materials occurred in Ohio and only then, according to Plaintiff, entered the ground, air, and water in Pennsylvania. *Id.* ¶¶ 26-35.  Consequently, while the alleged damages may be felt in Pennsylvania, it is indisputable that the facts necessary for a liability determination occurred solely in Ohio, where the derailment occurred.  *See Coultman v. Nat'l R.R. Passenger Corp.*, 857 F. Supp. 231, 236 (E.D.N.Y. 1994) (transferring negligence action for train derailment on the ground that, "if the defendants were at all negligent in causing or contributing to the derailment … , any such negligence must have occurred, if at all, within the" district where the derailment occurred). Since the February 3 derailment occurred in Ohio, this factor weighs heavily in favor of transfer in this matter.

iv.    *The Convenience of the Parties Indicated by their Relative Physical and Financial Condition*

11

Litigating this matter, along with over thirty others, in a single district would be far more convenient for the court and the parties than piecemeal litigation in multiple districts. Indeed, in *Osborne*, the court concluded that "the burden imposed on the Company by litigating substantially similar claims in two (2) separate districts would be considerable." *Osborne*, 2020 U.S. Dist. LEXIS 62443, at *25.  Plaintiff faces no particular additional burden from transfer, as it is physically located approximately equidistant from this Court in Pittsburgh and the courthouse in Youngstown, Ohio where substantially all of the cases in the Northern District of Ohio will be heard.  Similarly, Plaintiff's counsel, located in Butler and New Castle, Pennsylvania, are also located no closer to this Court than the alternative forum, and would not suffer further inconvenience due to additional travel, especially considering the inherent necessity of spending time in Ohio at the derailment site. Therefore, this factor weighs in favor of transfer.

v.   *Convenience of Witnesses*

"When ruling on a § 1404(a) motion, a court may consider the convenience of the witnesses 'only to the extent that the witnesses may actually be unavailable for trial in one fora.'"  *York Group, Inc. v. Pontone*, 2014 U.S. Dist. LEXIS 102139 at *45 (W.D. Pa. July 28, 2014) (citing *Jumara*, 55 F.3d at 879). Moreover, "[m]odern technology makes actual unavailability for trial less likely since video recordings of appearances can be made for trial and witnesses can appear remotely via video-conferencing technology." *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 2009 U.S. Dist. LEXIS 85976 at *12 n.3 (W.D. Pa. Sep. 21, 2009). Therefore, convenience of the witnesses has "taken on less importance than it might have been given twenty years ago." *York Group*, 2014 U.S. Dist. LEXIS 102139 at *46.  "Without evidence indicating that a witness is unwilling or unable to testify at trial, however, a court

12

should be cautious to *presume* a witness will not appear; instead, 'the better approach is to recognize that witnesses have and will appear here without having to be subpoenaed.'" *Id.* at *49 (citation omitted). "Conclusory allegations about nonparty witness convenience will 'not constitute evidence sufficient to establish . . . witnesses' unavailability.'" *Id.* at *51.

In this case, there is no indication that any witness will be unavailable for trial, and indeed many third-party witnesses related to the derailment are likely located in Ohio rather than Pennsylvania. Without any evidence that transfer would actually impact the presence of a witness at trial, this factor weighs in favor of transfer.

vi.   *Location of Books and Records*

Nothing in the record at this point suggests that any books and records relevant to this matter would not be available in either forum. As a party, Plaintiff is required to produce its discovery regardless of its physical location, and the books and records of the Defendants are not located in either judicial district, but Defendants are more than cognizant of their discovery obligations in this case. This factor therefore weighs in favor of transfer, or should be considered neutral.

3.   Public Interest Considerations Under *Jumara*

i.   *The Enforceability of the Judgment*

The enforceability of any judgment in this matter should not vary between the two judicial districts. Courts have held that "it is unlikely that there would be any significant difference in the difficulty of enforcing a judgment rendered by one federal forum or the other." *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 410 (3d Cir. 2017) (citation omitted). Such would be the case here, as Pennsylvania allows for the domestication of federal

judgments, and those judgments act as liens in the same way a state court judgment does when indexed.  *See* 42 Pa.C.S. §§ 4306, 4306.  Therefore, this factor is neutral.

      ii.    *Practical Concerns That Could Reduce the Time and Expense Necessary to Resolve the Claims at Issue*

As the Supreme Court has recognized, the avoidance of duplicative litigation is a proper consideration in a motion to transfer.  *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.").  Similarly, the Third Circuit has also held "the most important factor is the avoidance of duplicative litigation: Adjudicating almost identical issues in separate fora would waste judicial resources." *In re Amendt*, 169 F. App'x 93, 96 (3d Cir. 2006).  Consequently, "courts in our district have held that where there is a strong likelihood of consolidation with a related action, a transfer of venue is warranted." *Panitch v. Quaker Oats Co.*, 2017 U.S. Dist. LEXIS 51737, at *15 (E.D. Pa. Apr. 5, 2017).  Indeed, in *Unilever* the court noted "[t]his factor alone favors transfer." 774 F. Supp. 2d at 690.  "In fact, the presence of a related action in the transferee forum is such a powerful reason to grant a transfer that courts do so even where other *Jumara* factors, such as the convenience of the parties and witnesses, would suggest the opposite." *Villari Brandes & Kline*, 2009 U.S. Dist. LEXIS 54198 at *15

In this case, the existence of so many other cases arising out of the same set of operative facts weighs heavily in favor of transferring this matter.  Many of the cases in the Northern District of Ohio contain not only similar factual issues but identical legal causes of action.  In fact, of the seven counts in Plaintiff's Complaint, nearly all cases involve the same

14

causes of action.  The operative facts in the cases filed in Ohio are identical to this case, and this factor weighs heavily in favor of transfer.

iii.    *The Relative Administrative Difficulty in the Two Fora Resulting From Court Congestion*

When considering this factor, data provided by the Administrative Office of the U.S. Courts is instructive.  Based on this data, both the Western District of Pennsylvania and the Northern District of Ohio appear to have relatively similar statistics as of December 2022, although the Northern District of Ohio does have more cases pending overall.  *See Combined Civil & Criminal Federal Court Management Statistics (Dec. 31, 2022)*, *available at* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2022. pdf (last accessed March 29, 2023).  Each district sees between 3,000 and 4,000 new case filings per year, and the average time between filing and trial in civil actions is similar.  The Northern District of Ohio, however, currently has an additional judge assigned to the district. Based on the overall similarities between the two districts, this factor likely results in a neutral consideration.

iv.    *The Local Interest in Deciding Controversies at Home*

While Defendants are cognizant of this factor, the underlying derailment in this case did not occur in Pennsylvania, even though the Plaintiff district is geographically located here.  Instead, the locus of this case is Ohio, where the majority of the alleged conduct, including the derailment, fire, and release, occurred.  *See Lacey v. Cessna Aircraft Co.,* 862 F.2d 38, 48 (3d Cir. 1988).  Under the circumstances present here, transferring this case to a neighboring district would not severely impact the interest Pennsylvania or this Court may have in adjudicating a local controversy.  Indeed, Ohio likely has the greater interest as the

derailment occurred within its borders and the majority of lawsuits already pending were brought by and on behalf of Ohio residents.  Consequently, this factor weighs in favor of transfer.

     v.    *The Public Policies of the Fora*

As noted above, both Ohio and Pennsylvania have competing public interests in this case, as the incident occurred in Ohio, but Plaintiff alleges damages to Pennsylvania residents.  As many of the other putative class actions already potentially include Pennsylvania residents, *see Erdos v. Norfolk Southern Corporation*, Case No. 4:23-cv-00257, the interests of Pennsylvania residents are already protected in Ohio.  This is further buttressed by the fact that this issue occurred in an area near the border between the two states, and the parties and court involved are cognizant of the competing state interests. Consequently, this factor is neutral.

     vi.   *The Familiarity of the Trial Judge With the Applicable State Law in Diversity Cases*

In this case, the familiarity of the trial judge with state law should not be an issue, as the Northern District of Ohio is already dealing with potential Pennsylvania law claims in the putative class actions. "[A]lthough the familiarity of the trial judge with applicable state law . . . is a consideration that could tip the balance in an otherwise close call, this factor is of little weight." *Panitch* 2017 U.S. Dist. LEXIS 51737, at *21 (internal citations omitted).  As the *Jumara* court noted, absent a particular allegation, there is no grounds to believe a "disparity in the qualifications of the federal judges sitting in the two districts to pass on the same [state] law" exists.  55 F.3d at 883.  Consequently, this factor is of little weight and remains neutral.

\* \* \*

Defendants more than meet their burden under 28 U.S.C. § 1404(a) to show that a transfer is warranted in this case.  The Northern District of Ohio is more appropriate under the balance of private factors due to the other pending, and first-filed, lawsuits, the fact that the operative facts all occurred in Ohio, that neither party will suffer inconvenience in litigating in the alternate forum, that no evidence of witness unavailability exists, and there are no issues regarding the availability of books and records.  Even Plaintiff's forum choice, if given weight, does not outweigh the balance of the other five private factors in favor of transfer, and that choice "is never controlling." *Villari Brandes & Kline*, 2009 U.S. Dist. LEXIS 54198, at \*22.

Similarly, the public factors also weigh in favor of transfer.  None of the public factors clearly weigh in favor of Plaintiff, whereas "the most important factor," avoiding duplicative litigation, strongly favors transfer.  *See In re Amendt*, 169 F. App'x at 96.  Plaintiff's rights, and the interests of Pennsylvania on behalf of its residents, will be adequately protected by a transfer to an adjacent forum that shares a border between the derailment site and the Plaintiff's district.  As both the private and public factors weigh heavily in favor of transfer, this Court should transfer this case to the Northern District of Ohio.

### IV.   <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants respectfully request that this Honorable Court enter an Order granting their Motion to Transfer Venue to the United States District Court for the Northern District of Ohio.

Respectfully submitted,

DICKIE, McCAMEY & CHILCOTE, P.C.

By:  /s/ Scott D. Clements
     Scott D. Clements, Esquire
     J. Lawson Johnston, Esquire

     Two PPG Place, Suite 400
     Pittsburgh, PA  15222
     (412) 281-7272

     Attorneys for Defendants, Norfolk Southern Corporation, and Norfolk Southern Railway Company

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 7, 2023, I filed the foregoing **Brief in Support of Motion to Transfer Venue** with the Clerk using the CM/ECF System, which will send notification of such filing to all counsel of record.

DICKIE, McCAMEY & CHILCOTE, P.C.

By:  /s/Scott D. Clements
     Scott D. Clements, Esquire

     Attorneys for Defendants,
     Norfolk Southern Corporation and
     Norfolk Southern Railway Company